UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EON CORP. IP HOLDINGS, LLC, | § § | |
| Plaintiff, | § § | Civil Action No. _____ |
| v. | § § | JURY TRIAL REQUESTED |
| APPLE INC., | § § § | |
| Defendant. | § | |

## **PLAINTIFF EON CORP. IP HOLDINGS, LLC'S COMPLAINT**

Plaintiff EON Corp. IP Holdings, LLC ("EON") by and for its Complaint against Apple Inc. ("Apple") for infringement of U.S. Patent No. 5,592,491 (the "'491 Patent"), U.S. Patent No. 5,388,101 (the "'101 Patent"), U.S. Patent No. 5,481,546 (the "'546 Patent), and U.S. Patent No. 5,663,757 (the "757 Patent") (collectively, the "Patents-in-Suit") pursuant to 35 U.S.C. § 271, alleges as follows:

### I. THE PARTIES

1. Plaintiff EON Corp. IP Holdings, LLC is a Texas limited liability company with its principal place of business located at 719 W. Front Street, Suite 108, Tyler, Texas 75702. EON is a wholly owned subsidiary of EON Corporation, formerly known as TV Answer, Inc., a Delaware corporation founded in 1986. EON Corporation is a pioneering wireless technology research and development company that has been in continuous operation since its inception. In the early 1990s, the Federal Communications Commission granted EON Corporation's petition for an allocation of wireless spectrum specifically for its proposed innovative wireless service offering, known then as Interactive Video and Data Services. While the "IVDS" offering did not originally realize its full commercial potential, the company's technological advances in interactive digital wireless communications became the subject of a vast intellectual property

portfolio covering many communication techniques and devices that have become commonplace in recent years.  EON, as the licensing division of EON Corporation, has been approaching companies in the wireless and interactive video industries to properly license its foundational technologies.  In the current skeptical and hostile licensing environment, the largest communications companies often play a game of ostrich, burying their head in the sand and giving wireless consumers the products and services they demand despite at least a general recognition that in doing so they are traversing property boundaries owned by others.  These companies refuse to license even those technologies with a strong pedigree and licensing track record.  Costly and contentious patent litigation is the necessary result of this reckless but profitable behavior.  Many of Apple's major competitors in the wireless industry have properly paid for using EON's technology.  By this action, EON engages a compulsory process that will require Apple to do the same.

2. Defendant Apple is a corporation organized under the laws of the State of California with its principal place of business located at 1 Infinite Loop, Cupertino, California 95014.  In addition to Apple's continuous and systematic conduct of business in Texas, the causes of action against Apple arise from or are connected with Apple's purposeful acts committed in Texas, including Apple's selling, offering to sell, using, inducing others to use, and contributing to the use of cellular handsets and related products, applications, and services containing interactive television programming that embody one or more claims of the Patents-in-Suit.  Apple may be served with process through its registered agent, CT Corporation, 350 N. St. Paul Street, Dallas, Texas 75201.

## II. JURISDICTION AND VENUE

3. This is an action for patent infringement under the Patent Laws of the United States, Title 35 of the United States Code ("U.S.C."). The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue lies in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

4. This Court has personal jurisdiction over Apple under the laws of the State of Texas, including Texas Civil Practice and Remedies Code § 17.042.

5. This Court has personal jurisdiction over Apple. Apple has conducted and does conduct business within the State of Texas, directly or through intermediaries or agents, or offers for sale, sells, and advertises (including through the provision of interactive web pages) handsets and related products, applications, and services that directly and/or indirectly infringe the Patents-in-Suit.

## III. FACTUAL ALLEGATIONS

### A. The '757 Patent

6. On September 2, 1997, after a full and fair examination, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '757 Patent, titled "Software Controlled Multi-Mode Interactive TV Systems." The claims of the '757 Patent were confirmed during reexamination, as evidenced by the Reexamination Certificate issued on August 14, 2012. A true and correct copy of the '757 Patent and Reexamination Certificate are attached hereto as Exhibit A.

7. Broadly speaking, the '757 patent claims a data processing station subscriber unit with interactive video capabilities. This technology has recently become ubiquitous, as entities like Apple now manufacture and sell subscriber units and deliver quality interactive video

content for wireless device users at affordable prices.  EON's technology is fundamental to the development of these products and services.

8.  Without reference to the particular construction of any claim terms, features of the technology claimed in the '757 Patent include:  (1) a software operating system in the wireless subscriber unit for controlling received interactive video content; (2) selectable content options on a video screen display; (3) the ability to create customizable programming menus or guides for individual subscribers on the display screen; and (4) wireless transmission and reception facilities in the subscriber unit that allow for the sending and receiving of interactive control signals, including messages with subscriber IDs.

9.  Apple manufactures, uses, sells, offers for sale, and imports subscriber units that deliver interactive video programming to subscribers throughout the United States and its territories.

10.  EON is the assignee through an exclusive license of all right, title, and interest in and to the '757 Patent and possesses all rights of recovery under the '757 Patent, including the exclusive right to recover for infringement.  The '757 Patent is valid and enforceable.

11.  Apple has been and is presently infringing at least one claim of the '757 Patent literally or under the doctrine of equivalents, directly or indirectly, including by knowingly and specifically intending to contribute to or induce infringement by others, alone or with mobile network operators (*e.g.*, cellular providers), mobile interactive video content (and associated application) providers, and/or end-users.

12.  For example, Apple directly infringes by making, using, selling, offering for sale, importing and/or exporting interactive video services (*e.g.*, Apple TV, iTunes, App Store, etc.) and compatible subscriber units (*e.g.*, iPhone 3, iPhone 3S, iPhone 4, iPhone 4S, iPhone 5, iPad,

iPad 2, iPad with retina display, iPad mini, iPod Touch, Apple TV and similar interactive-video-enabled devices) that embody one or more claims of the '757 Patent.

13. Apple indirectly infringes by contributing to direct infringement by its customers and mobile network operators by selling, offering for sale, importing and/or exporting these subscriber units and interactive video services that are configured for use in and constitute a material portion of the patented invention (*e.g.*, data processing station subscriber units that deliver interactive television or television-quality entertainment and informational content to subscribers).

14. Apple induces direct infringement of the '757 Patent, for example, by advertising and instructing customers how to access and use interactive video services such as Apple TV, iTunes, Netflix, and YouTube on the accused subscriber units. Apple's customers that are mobile network operators and end-users of the subscriber units' interactive video features directly infringe the apparatuses and methods of '757 Patent by making, using, selling, offering to sell, importing into the United States or exporting from the United States the accused subscriber units and interactive video services.

15. Apple acted and continues to act intentionally and with knowledge of its infringement of the '757 Patent at least since the date this lawsuit was filed or served. On information and belief, third parties, including current and prior defendants in related matters involving the same patents, put Apple on notice of EON's claims and of Apple's infringing activities prior to the filing of this Complaint. For example, on December 20, 2011, AT&T sent a letter notifying Apple of several Apple devices implicated in a related EON case involving all of the Patents-in-Suit.[1] In addition, on August 10, 2012, Puerto Rico Telephone Company, Inc.

---

[1] *EON v. AT&T*, 11-cv-01555-FAB, E.D. Tex.

PLAINTIFF'S ORIGINAL COMPLAINT                                                                                                5

sent Apple a similar letter.[2] Through these letters, third parties notified Apple of its devices that EON accused in the *AT&T* case as components or devices that alone or together with other components comprise the inventions claimed by each of the Patents-in-Suit. Apple received a copy of the *EON v. AT&T* complaint identifying all of the current Patents-in-Suit and EON's allegations of infringement regarding these Apple devices. The same or substantially similar Apple components and devices accused in the *AT&T* case are devices implicated in the present case. Also, on June 13, 2012, Apple filed a non-party joinder opposing EON's motion to compel Verizon to produce documents in a related case involving the '491 Patent-in-Suit.[3] As a result of Apple's opposition to EON's motion to compel and its receipt of the third party letters, EON believes Apple obtained knowledge of EON's patent portfolio and learned that it infringed and continues to infringe each of the Patents-in-Suit well in advance of the filing of the instant Complaint.

16. Apple's mobile video services and compatible subscriber units offer program selection and interactive, mobile video functionalities that are not staple articles or commodities of commerce suitable for substantial non-infringing use.

### B. The '101, '546, and '491 Patents (the "Dinkins Patents")

17. On February 7, 1995, after a full and fair examination, the USPTO duly and legally issued and confirmed the '101 Patent, titled "Interactive Nationwide Data Service Communication System for Stationary and Mobile Battery Operated Subscriber Units." The claims of the '101 Patent were confirmed during reexaminations, as evidenced by Reexamination Certificates issued on January 17, 2012 and August 14, 2012. A true and correct copy of the '101 Patent and the Reexamination Certificates are attached hereto as Exhibit **B**.

---

[2] *EON v. AT&T*, 11-cv-01555-FAB, E.D. Tex.
[3] *EON v. T-Mobile*, 6:10-cv-379, E.D. Tex., Dkt. 779 and 780.

18. On January 2, 1996, after a full and fair examination and reexamination, the USPTO duly and legally issued and confirmed the '546 Patent, entitled "Interactive Nationwide Data Service Communication System for Stationary and Mobile Battery Operated Subscriber Units" as a continuation of the '101 Patent. The claims of the '546 Patent were confirmed during reexaminations, as evidenced by Reexamination Certificates issued on August 3, 2010 and October 4, 2011. A true and correct copy of the '546 Patent and Reexamination Certificate are attached hereto as Exhibit C.

19. EON is the assignee through an exclusive license with EON Corporation of all right, title, and interest in and to the '101 Patent and possesses all rights of recovery under the '101 Patent, including the exclusive right to recover for infringement. The '101 Patent is valid and enforceable.

20. EON is the assignee under an exclusive license with EON Corporation of all right, title, and interest in and to the '546 Patent and possesses all rights of recovery under the '546 Patent, including the exclusive right to recover for infringement. The '546 Patent is valid and enforceable.

21. The '101 and '546 Patents describe a multi-faceted communication structure designed to enable two-way wireless digital signals to be exchanged between one or more base stations or cell site communication system(s) and remote, low-powered subscriber units placed at a distance from the base stations or cell site communication systems. Broadly and without reference to the particular construction of any claim terms, features of the communications technology claimed in the '101 and '546 Patents include individual low power subscriber units that transmit and receive wireless digital information from a network of cells to provide customers with a range of interactive and wireless data services.

22. On January 7, 1997, the USPTO duly and legally issued the '491 Patent, titled "Wireless Modem," after a full and fair examination. A true and correct copy of the '491 Patent is attached hereto as Exhibit D.

23. EON is the assignee under an exclusive license with EON Corporation of all rights, title, and interest in and to the '491 Patent and possesses all rights of recovery under the '491 Patent, including the right to recover for past infringement. The '491 Patent is valid and enforceable.

24. The '491 Patent is a continuation-in-part of the '101 Patent. The '491 Patent enables communication in a two-way network between subscribers and the network base station or network hub switching center via multiple paths (*e.g.*, a Wide-Area-Network (WAN) path or a Local-Area-Network (LAN) path). The '491 Patent teaches deploying a wireless modem in the home or office as an alternate network access point. The '491 Patent overcomes persistent coverage and capacity issues in cellular deployments without the need for additional costly network infrastructure (*e.g.*, base stations), and thereby helps to stabilize the cost of communication services within the network. Therefore, wireless interactive video services requiring increased bandwidth or speed become feasible. In fact, one of the many advantages of the patented technology is the provision of high bandwidth applications and services to multiple subscribers at peak load capacity in and out of the home or office by combining cellular access with a wireless modem LAN using, for instance, Wi-Fi technology.

25. The technology taught and claimed in the '101, '546, and '491 Patents was invented by then EON head engineer, Gilbert Dinkins, and these patents are collectively referred to as the "Dinkins Patents."

26. Apple has been and is presently infringing at least one claim of each of the Dinkins Patents literally or under the doctrine of equivalents, directly or indirectly by knowingly and specifically intending to contribute to or induce infringement by others, alone or with wireless network operators, application providers, customers, and/or end users. Apple makes, uses, sells, offers for sale, imports and/or exports wireless devices (*e.g.*, iPhone 3, iPhone 3S, iPhone 4, iPhone 4S, iPhone 5, iPad, iPad 2, iPad with retina display, iPad mini, iPod Touch, Apple TV, Airport Extreme, Airport Express and similar devices) that fall within the scope of at least one claim of each of the Dinkins Patents or are especially configured for use in and constitute a material portion of the patented inventions.

27. Apple indirectly infringes by contributing to direct infringement by its customers and mobile network operators through the selling, offering for sale, importing and/or exporting of, for example, dual-mode wireless devices that are specially configured for use in and constitute a material portion of the patented invention.

28. Apple induces others, including its customers and mobile network operators, to directly infringe the Dinkins Patents, for example, by providing wireless devices with multi-path capability to customers and instructing them in how to switch between WAN and LAN communication paths.

29. Apple induces infringement by actively instructing and encouraging its customers to use Apple's wireless devices in infringing network configurations by touting the advantages that its products can provide to such users, by providing technical assistance in integrating its products into such network configurations, or by providing service manuals or other instructions explaining how to use the Apple wireless devices in a way that infringes the claims of the Dinkins Patents. In addition, Apple actively promotes the advantages that its wireless devices

can offer end users, including wider coverage and availability for its users and the applications they desire and increased communication speeds throughout the user experience both at home or on the go. Apple's customers, end users, and network operators directly infringe the apparatus and method claims of the Dinkins Patents by importing, exporting, making, using, selling, and/or offering to sell infringing networks that include Apple's wireless devices.

30. Apple acted and continues to act intentionally and with knowledge of its infringement of the Dinkins Patents at least since the date this lawsuit was filed or served. On information and belief, third parties, including current and prior defendants in related matters involving the same patents, put Apple on notice of EON's claims and of Apple's infringing activities prior to the filing of this Complaint. For example, on December 20, 2011, AT&T sent a letter notifying Apple of several Apple devices implicated in a related EON case involving all of the Patents-in-Suit.[4] In addition, on August 10, 2012, Puerto Rico Telephone Company, Inc. sent Apple a similar letter.[5] Through these letters, third parties notified Apple of its devices that EON accused in the *AT&T* case as components or devices that alone or together with other components comprise the inventions claimed by each of the Patents-in-Suit. Apple received a copy of the *EON v. AT&T* complaint identifying all of the current Patents-in-Suit and EON's allegations of infringement regarding these Apple devices. The same or substantially similar Apple components and devices accused in the *AT&T* case are devices implicated in the present case. Also, on June 13, 2012, Apple filed a non-party joinder opposing EON's motion to compel Verizon to produce documents in a related case involving the '491 Patent-in-Suit.[6] As a result of Apple's opposition to EON's motion to compel and its receipt of the third party letters, EON believes Apple obtained knowledge of EON's patent portfolio and learned that it infringed and

---

[4] *EON v. AT&T*, 11-cv-01555-FAB, E.D. Tex.
[5] *EON v. AT&T*, 11-cv-01555-FAB, E.D. Tex.
[6] *EON v. T-Mobile*, 6:10-cv-379, E.D. Tex., Dkt. 779 and 780.

PLAINTIFF'S ORIGINAL COMPLAINT                                                                                       10

continues to infringe each of the Patents-in-Suit well in advance of the filing of the instant Complaint.

31. Apple's wireless devices are made especially for performing the communication methods and for use on networks that infringe the Dinkins Patents and are not staple articles or commodities of commerce suitable for substantial noninfringing use. For example, Apple's wireless devices are made especially for performing the communication methods and for use on networks that infringe the Dinkins Patents because they include multimode or dual path communication features and functions that are not staple articles or commodities of commerce suitable for substantial noninfringing use.

## IV. CAUSE OF ACTION

### Infringement of the Patents-in-Suit

32. EON repeats and realleges the allegations set forth in Paragraphs 1 through 31 as if those allegations had been fully set forth herein.

33. Defendant, without authorization or license and in violation of 35 U.S.C. § 271(a), (b), (c) and (f), has been and is infringing the '757 Patent, the '101 Patent, the '546 Patent, and the '491 Patent directly, by inducement, and/or contributorily.

34. Because Defendant had actual knowledge of EON's infringement allegations prior to the commencement of this action, Defendant's infringement has been and is willful. Furthermore, Defendant's infringement occurring after the date of this action will continue to be willful.

35. EON has no adequate remedy at law against Defendant's acts of infringement, and Defendant's infringement will continue unless enjoined by this Court.

36. Defendant's unauthorized use of EON's patented-technology causes EON and its licensees harm.

37. EON has suffered and will continue to suffer irreparable injury as a result of Defendant's infringement, including through the harm described in the preceding paragraph.

38. EON is in compliance with any requirements of 35 U.S.C. § 287, if applicable.

39. EON has been damaged by Defendant's infringement and will continue to be damaged until enjoined by this Court.

## V. PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant, and in favor of Plaintiff. Plaintiff prays that this Court:

A. award Plaintiff all relief available under § 284 of the Patent Act, including monetary damages, for the Defendant's infringement in an amount to be determined by the trier of fact;

B. award Plaintiff all relief available under § 285 of the Patent Act, including the costs of this litigation as well as expert witness and attorneys' fees;

C. order payment of all applicable interests, including prejudgment interest; and

D. award Plaintiff whatever equitable relief is deemed appropriate.

## VI. DEMAND FOR JURY TRIAL

EON demands a trial by jury of any and all issues triable of right before a jury.

Dated: December 19, 2012         Respectfully Submitted,

*/s/ Daniel Scardino*
Daniel Scardino
Texas State Bar No. 24033165
Cabrach J. Connor
Texas State Bar No. 24036390
Jeffery R. Johnson
Texas State Bar No. 24048572
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, Texas 78701
Tel.: (512) 474-2449
Fax: (512) 474-2622
dscardino@reedscardino.com
cconnor@reedscardino.com
jjohnson@reedscardino.com

**ATTORNEYS FOR PLAINTIFF
EON CORP. IP HOLDINGS, LLC**