UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EON CORP IP HOLDINGS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>    Defendant. | Case No. 14-cv-05511-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO AMEND INFRINGEMENT CONTENTIONS**<br><br>Re: Dkt. No. 89 |

The question presented by the motion of defendant EON Corp. IP Holdings LLC ("Eon") to amend its infringement contentions is whether it was diligent in bringing the motion over a year and a half after it served its original infringement contentions on Apple, Inc. ("Apple"). Eon argues that it was, because its need to exercise diligence did not arise until (i) this case was transferred from the Eastern District of Texas to this District in December, 2014, and (ii) another court in this district issued an adverse claim construction and summary judgment ruling in a separate case involving Eon's patent that was affirmed by the Federal Circuit in March of this year. But waiting until mid-April of 2015 does not show diligence, since Eon knew of the adverse claim construction ruling in the other case *before* it served its original infringement contentions and suffered a loss on summary judgment in that case in April, 2014. Eon's request to amend is DENIED for all amendments adding information. Eon's request to delete certain theories that the claim construction rendered invalid is GRANTED.

## BACKGROUND

Eon filed this lawsuit in the Eastern District of Texas on December 19, 2012. Dkt. No. 1. Eon asserts that it chose that venue because the Eastern District of Texas had previously construed terms in the patent at issue, the '491 Patent, on several occasions. Mot. 3-4 (Dkt. No. 89). It served its preliminary infringement contentions on August 21, 2013. *Id.* at 4. According to Eon,

1   its contentions were based upon the Eastern District of Texas's prior constructions of its patents,
2   including the '491 Patent. *Id.*

3   Apple moved to transfer the case to the Northern District of California on April 4, 2013.
4   Dkt. No. 21. That motion was denied on March 28, 2014. Dkt. No. 40. Immediately afterwards,
5   the parties entered into settlement negotiations for three and one-half months, during which the
6   case was jointly stayed twice. Mot. 7. Apple then petitioned the Federal Circuit for a writ of
7   mandamus to have the case transferred, which was granted in September 2014. Dkt. No. 55. The
8   transfer to the Northern District of California occurred on December 16, 2014. *See* Dkt. No. 59.

9   While this case was pending in the Eastern District of Texas, Eon had prosecuted another
10  case for infringement of the '491 Patent against several network providers before the Hon. Jon S.
11  Tigar in this District. On July 8, 2013, Judge Tigar issued a claim construction order in that case,
12  *EON CorpIP Holdings LLC v. Cisco Systems Inc* ("*Cisco*"). *See EON Corp.IP Holdings LLC v.*
13  *Aruba Networks Inc.*, No. 12-CV-01011-JST, 2013 WL 3455631, at *1 (N.D. Cal. July 8, 2013)
14  *rev'd on reconsideration sub nom. EON Corp IP Holdings LLC v. Cisco Sys. Inc*, No. 12-CV-
15  01011-JST, 2014 WL 793323 (N.D. Cal. Feb. 25, 2014) and *opinion revised and superseded sub*
16  *nom. Eon CorpIP Holdings LLC v. Aruba Networks Inc*, No. 12-CV-01011-JST, 2014 WL 938511
17  (N.D. Cal. Mar. 5, 2014). He issued a summary judgment order against Eon on April 1, 2014.
18  *EON CorpIP Holdings LLC v. Cisco Sys. Inc*, 36 F. Supp. 3d 912 (N.D. Cal. 2014). These orders
19  rejected certain of Eon's theories and constructions of the '491 Patent.

20  Eon appealed Judge Tigar's summary judgment order to the Federal Circuit and lost on
21  March 16, 2015. *EON Corp. IP Holdings LLC v. Cisco Sys., Inc.*, 595 F. App'x 991, 992 (Fed.
22  Cir. 2015). Eon filed its motion on April 17, 2015, arguing that it has good cause to amend the
23  infringement contentions based upon the transfer to this Court in December of 2014 and as a result
24  of claim the construction and summary judgment order in *Cisco* and its affirmance on March 16,
25  2015.

26  **LEGAL STANDARD**

27  Pursuant to the Patent Local Rules for the Northern District of California, the party
28  claiming infringement must submit infringement contentions within 14 days of the parties' initial

2

Case Management Conference. Patent L.R. 3-1. These must include, among other things, "each accused apparatus, product, device, process, method, act, or other instrumentality ('Accused Instrumentality') of each opposing party of which the party is aware," and "be as specific as possible." Patent L.R. 3-1(b). In addition, the contentions should include an indication of "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." Patent L.R. 3-1(e). The "parties should proffer all of the theories of infringement that they in good faith believe they can assert." *Apple Inc. v. Samsung Electronics Co.*, No. 12-CV-0630-LHK PSG, 2013 WL 3246094, at *3 (N.D. Cal. June 26, 2013).

The court may allow a party to amend its infringement contentions only "upon a timely showing of good cause." Patent L.R. 3-6. The Patent Local Rules supply several circumstances that support a finding of good cause, provided there is no prejudice to the non-moving party. *Id.* These include "[a] claim construction by the Court different from that proposed by the party seeking amendment," and "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." *Id.*

The patent local rules were designed to require parties to crystallize their theories of infringement early in litigation, and to adhere to such theories. *Samsung*, 2013 WL 3246094, at *1. In determining whether a party has good cause to amend, courts will first look to see whether the moving party has acted with diligence, and then to whether the non-moving party will suffer prejudice. *Id.* The focus of this inquiry is on the moving party's reasons for seeking amendment. *Id.*

"[T]he philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *Atmel Corp. v. Info. Storage Devices Inc.*, No. C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006). The Federal Circuit has recognized that the local rules simultaneously require parties to provide early notice of invalidity and infringement contentions, while proceeding with diligence in amending those

3

1  contentions. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006). They "thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *Id.* at 1366.

## DISCUSSION

Eon's patents at issue in this case involve "data communication systems that are designed to enable two-way communications between a network and an individual subscriber unit," such as a cell phone. Mot. 3; *see also* U.S. Patent No. 5,592,491 ("'491 Patent") (Dkt. No. 1-4). "[T]he claims in the '491 Patent utilize a system that determines whether Path A [i.e., a cellular network connection] is impaired and then transfers communication to Path B [i.e., a wireless or Wi-Fi network connection] as a result." Mot. 3. The '491 Patent envisions a process whereby a device will always connect to "Path A" where it is available, but when it is not available or impaired, will connect via "Path B." *Id.*

Eon claims that Apple infringed these patents by producing wireless devices, such as iPhones, that have "multi-path capability." Compl. ¶¶ 26, 28 (Dkt. No. 1). The first infringement contentions for claim 13 described two-way communication networks based upon services such as LTE and Wi-Fi. *See* Am. Infringement Contentions at 2 (Dkt. No. 92-1).[1] Apple produces the allegedly infringing subscriber units, such as iPhones and tablets. *Id.* at 10-15. The "network hub switching centers" included "Apple email servers (*e.g.*, iMail), location services (*e.g.*, Apple Maps), and other internet based services (*e.g.*, iTunes, iCloud, Facetime, Siri, Game Center, Messages, the Apple App Store)." *Id.* at 15. The infringement contentions also listed several network hub switching centers, such as "[a]pplication and hosted services servers." *Id.* at 17-18.

In the case before Judge Tigar, Eon alleged that the defendants' handsets infringed the '491 Patent where they automatically connected using Wi-Fi if it was available, regardless of whether cellular service was available. *Cisco*, 36 F. Supp. 3d at 921. Eon argued that the products infringed claim 13 under a "user-activation theory," whereby cell phone users chose to communicate via Wi-Fi when a phone lost its cellular signal. *Id.*; *see also* Mot. 5. Eon contended

---

[1] The amended infringement contentions are redlined and reflect both the current contentions and the proposed amendments.

4

1  that the handsets infringed claim 13 because a user could manually connect to Wi-Fi when cellular
2  service was not available.
3        Judge Tigar rejected Eon's argument that claim 13 covered a user's choice to manually
4  connect to Wi-Fi. *Cisco*, 36 F. Supp. 3d at 921-22; *Aruba Networks Inc.*, 2013 WL 3455631, at
5  *13, 15-16. He found that the conditional "if" terms in the claim describe how communication
6  occurs if cellular service is available.[2] *Aruba Networks Inc.*, 2013 WL 3455631, at *13-16. Eon's
7  patented device connects through a cellular network when available, and automatically connects
8  via Wi-Fi if the cellular network is lost or impaired. Under his construction, the user does not play
9  any role in determining whether a path was impaired and which path to use.
10        In the summary judgment order issued on April 1, 2014, Judge Tigar further discussed
11  Eon's theory of infringement. *Cisco*, 36 F. Supp. 3d at 921. The order reiterated that claim 13
12  only covered the process of automatic connection to Wi-Fi when cellular service was not
13  available. *Id.* at 920-21. In other words, the claimed function covers connections that are
14  conditioned on the availability of cellular service, and not on the availability of Wi-Fi.
15  Accordingly, a user's act of manually connecting via Wi-Fi instead of cellular service did not fall
16  within the scope of the claim. *Id.* at 921. Judge Tigar concluded that because the accused
17  handsets would connect using Wi-Fi if they were able to, regardless of whether cellular service
18  was available, they were not infringing. *Id.* at 923.
19        Eon takes the position that both of Judge Tigar's orders in the *Cisco* case are adverse claim
20  construction rulings that provide it with good cause to amend the infringement contentions under
21  Patent Local Rule 3-6(a). It argues that the "transfer [from the Eastern District of Texas to the
22  Northern District of California] substantially increases the likelihood that EON will contend with a
23  claim construction that is materially different than the E.D. Tex. constructions, pursuant to which
24  it created its claim construction charts in this case." Mot. 8. It points to the fact that the Texas

---

[2] Judge Tigar construed the term "transferring . . . if said at least one subscriber unit is unable to communicate directly with a local base station repeater cell" to mean "transferring . . . if said local subscriber units are unable, for some reason other than the user intentionally disabling said unit, to directly communicate with said local base station repeater cell." *Cisco*, No. 12-cv-01011-JST, Dkt. No. 748 (N.D. Cal. July 8, 2013).

5

1    court "never placed a limitation on the '491 Patent barring the role of a user to initiate a
2    connection with Path B [Wi-Fi]." *Id.* at 9.

3        Eon's proposed amendments fall into three general categories: (i) the addition of Apple
4    Push Notification Service ("APNs" or "APN service") as a theory of infringement; (ii) the
5    addition of certain Apple devices; and (iii) the deletion of certain theories.

**I.   APN SERVICE**

    In response to Judge Tigar's claim construction, Eon seeks to include in its infringement contentions theories involving the APNs. The amended infringement contentions state: "The two-way network at issue is Apple's Apple Push Notification service (APNs) network, which comprises Apple's APNs servers, Apple's iPhones and other iOS devices, which communicates preferably via AT&T's GSM/LTE networks, and alternatively via Wi-Fi access points." Am. Infringement Contentions at 1. According to Eon, the APNs automatically connects to servers using cellular data. Mot. 21. If cellular data is unavailable or not viable, the APNs uses a Wi-Fi network. *Id.*

    Eon first claims that the APNs directly infringes under its existing theories because the APNs is "application software" or a "microprocessor" on the subscriber unit. *Id.* at 21-22. Eon states that the addition of APNs does not broaden the scope of its infringement contentions but merely clarifies them by adding detail. Mot. 20-22. But Eon's amendments add the APNs and associated network equipment as the equivalent of the "network hub switching center" that "performs routing and switching functions" under the doctrine of equivalents. Am. Infringement Contentions at 15, 19. Thus the amendments indicate that the inclusion of the APNs is actually a new argument based upon the doctrine of equivalents rather than a clarification of Eon's original theory.

    Apple asserts that Eon was not diligent in adding the APNs theories because information about the APNs was publicly available before the original infringement contentions were filed. Oppo. 9-10 (Dkt. No. 95). It points out that Eon could have brought the APNs argument under its own proposed constructions *and* under Judge Tigar's construction, and that the claim construction basis for good cause under Patent Local Rule 3-6(a) does not apply. *Id.* at 12-13. Apple further

1  contends that Judge Tigar's ruling was not "materially different" from the rulings in the Texas
2  court and that Judge Tigar even relied upon Texas courts' constructions of the '491 Patent. *Id.* at
3  13.
4        As a preliminary matter, it is not clear that Judge Tigar's claim construction would create a
5  material difference that would give rise to good cause in this case under Patent Local Rule 3-6(a).
6  Eon does not dispute that the APNs argument was available to it under its prior infringement
7  theories before any of Judge Tigar's orders issued. Nor does it contend that its prior construction
8  of the '491 Patent would not have supported a theory that the APNs infringed.[3] Judge Tigar's
9  construction of the terms and his summary judgment ruling did not make the APNs theory
10 possible or call for the clarification that Eon proposes to make. Eon had notice of one jurist's
11 initial perspective on claim construction before it served its initial infringement contentions. So it
12 appears that Eon added the APNs argument because Judge Tigar's rulings rejected its other
13 theories of the case. This is exactly the "'shifting sands' approach to claim construction" that the
14 Patent Local Rules were designed to prevent. *See O2 Micro*, 467 F.3d at 1364.
15       However, I need not resolve whether Judge Tigar's orders had a material effect upon Eon's
16 theory of infringement because their timing establishes Eon's lack of diligence. As an initial
17 matter, I reject any argument that Eon's need to show diligence was not triggered until the Federal
18 Circuit made its decision on March 16, 2015. I have previously held that "where the court adopts
19 the opposing party's proposed claim construction, the moving party's diligence, without which
20 there is no good cause, is measured from the day the moving party received the proposed
21 constructions, not the date of the issuance of the Court's claim construction opinion." *France*
22 *Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-CV-04967-WHO, 2014 WL 1899616, at *4
23 (N.D. Cal. May 12, 2014); *see also Sunpower Corp. Sys. v. Sunlink Corp.*, No. C-08-2807 SBA
24 (EMC), 2009 WL 1657987, at *1 (N.D. Cal. June 12, 2009) ("The risk of the construction

---

[3] Although Eon's original theory was based upon the fact that a user was involved with the process, Eon could also have brought a theory based upon the APNs as a separate theory. The APNs described falls within Judge Tigar's construction of claim 13: APNs will only attempt to connect to Wi-Fi if there is no cellular service available, and will do so automatically and without user intervention.

7

rendered by the presiding judge was well known and anticipated by Defendant. Prior art and claims charts anticipating that construction had already been provided . . . The ruling in and of itself does not constitute good cause."); *Cisco Sys., Inc. v. Teleconference Sys., LLC.*, No. 09-CV-01550 JSW (NC), 2012 WL 9337627, at *3 (N.D. Cal. June 11, 2012). Any argument that Eon showed diligence while waiting for the Federal Circuit's ruling on its appeal of Judge Tigar's summary judgment order does not bear weight.

Judge Tigar's last order in *Cisco*, granting summary judgment, was issued on April 1, 2014. The Federal Circuit granted Apple's writ of mandamus in this case on September 11, 2014 and the case was transferred on December 16, 2014. But Eon did not give Apple notice of its intent to amend its infringement contentions until March 31, 2015, and did not actually move to amend until April 17, 2015.

If I ignore the facts that Eon had notice of both Apple's proposed constructions and Judge Tigar's claim construction order before it served its contentions, that it received the adverse summary judgment ruling more than a year before it filed its motion to amend, and that the Federal Circuit granted Apple's mandamus petition to transfer this case to this District seven months before Eon filed the motion to amend, it still took Eon more than three and a half months after the actual date of transfer to give notice of its intent to amend. Eon has not provided any persuasive reason for this delay. In one of the cases upon which Eon relies that granted leave to amend, *Life Technologies Corp. v. Biosearch Technologies, Inc.*, the party moved for "leave to amend within one month of being transferred to this district" from the Eastern District of Texas. No. C 12-00852 WHA, 2012 WL 1831595, at *2 (N.D. Cal. May 18, 2012). The amount of delay in this case is in stark contrast and does not demonstrate diligence. *See O2 Micro*, 467 F.3d at 1367 ("Even accepting O2 Micro's contention that it could not know how the open lamp pin operated until . . . February 2003 and focusing on the period after this [time], as the district court did, O2 Micro waited almost three months, until May 23, to serve its proposed amended contentions and two more weeks to formally move to amend."); *Altera Corp. v. PACT XPP Technologies, AG*, No. 14-CV-02868-JD, 2015 WL 928122, at *2 (N.D. Cal. Feb. 19, 2015) ("Our district typically finds lack of diligence when delays run for many weeks or months").

The cases to which Eon cites do not support its argument for diligence. In *Tessera, Inc. v. Advanced Micro Devices, Inc.*, the court allowed a party to amend its preliminary infringement contentions when it sought leave to amend over six months after serving the preliminary infringement contentions, where "a majority of the proposed changes conform[ed] the invalidity contentions in this case to those served on Plaintiff in a related arbitration." No. C 05-4063SW, 2007 WL 1288199, at *1 (N.D. Cal. Apr. 30, 2007) *decision reviewed,* No. C-05-4063CW, 2007 WL 2972628 (N.D. Cal. Oct. 10, 2007). In *Yodlee, Inc. v. CashEdge, Inc.*, the party moved to amend its contentions less than three months after filing the original ones and after it had appointed new counsel. No. C05-01550 SI, 2007 WL 1454259, at *1 (N.D. Cal. May 17, 2007).

The other cases to which Eon cites, such as *Halo Electronics, Inc. v. Bel Fuse Inc.*, discuss situations where parties seek to amend prior to claim construction. *See* No. C07-06222 RMW HRL, 2010 WL 3489593, at *1 (N.D. Cal. Sept. 3, 2010); *see also Altera Corp.*, 2015 WL 928122, at *2; *Tessera, Inc.*, 2007 WL 1288199, at *1. Here, both parties have taken the position that the claim construction in the *Cisco* triggers the need for amendment. This position is correct, as the purpose of the good cause requirement is to give notice and require the parties to crystallize theories that they reasonably know of. *Samsung*, 2013 WL 3246094, at *1. The *Cisco* claim construction order has long since been issued, gone through summary judgment, and been appealed.

Eon did not act with diligence in adding the APNs theories. Therefore, its motion to amend the infringement contentions to include new theories relating to the APNs is DENIED.

**II. ADDITIONAL DEVICES**

Eon also seeks to add four devices to its infringement contentions: iPhone 5s, iPhone 5c, iPad Mini 2, and iPad Air. Am. Infringement Contentions at 13; Mot. 22. It concedes that these devices were all released in late 2013. Mot. 22. Eon relies upon one case to support its request for amendment to add the devices. But in that case, the defendant moved to add the new devices only one week after they were released. *Apple Inc. v. Samsung Electronics Co.*, No. CV 12-00630 LHK, 2012 WL 5632618, at *2 (N.D. Cal. Nov. 15, 2012). For the same reasons discussed above, Eon was not diligent in moving to amend to add these products after several months if not years,

9

and its late request to amend is DENIED.

## III. DELETION OF EXISTING THEORIES

Eon proposes to delete several portions of its infringement contentions on the basis that they are invalidated by Judge Tigar's orders. Mot. 18-20. Although Apple argued at the motion hearing that these deletions are inappropriate, I find that the deletion will help to streamline the litigation. In addition, Eon has clearly expressed its intent to abandon some infringement theories on the basis that they are precluded by Judge Tigar's claim construction. These considerations support a finding of good cause to amend and demonstrate that there will be no prejudice to Apple. Accordingly, to the extent that the amended infringement contentions delete theories that are rendered futile by Judge Tigar's orders, the motion to amend is GRANTED.

## IV. PREJUDICE

Because Eon did not act with diligence in moving to amend its infringement contentions to include new theories, I need not address the question of prejudice to Apple. When there is no diligence, the inquiry into whether amendment is justified ends. *See O2 Micro*, 467 F.3d at 1368 ("Having concluded that the district court could properly conclude that O2 Micro did not act diligently in moving to amend its infringement contentions, we see no need to consider the question of prejudice to MPS.").

## CONCLUSION

For the above reasons, Eon's motion to amend its infringement contentions is GRANTED as to the deletions it wishes to make to reflect its abandoned theories. It is DENIED as to all other requests to amend. Eon shall file these amended infringement contentions by June 15, 2015.

**IT IS SO ORDERED**.

Dated: June 5, 2015

WILLIAM H. ORRICK
United States District Judge